UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| SRVR, LLC, | ) |
| Plaintiff, | ) Civil Action No. 3:18-CV-050-CHB |
| v. | ) |
| | ) **MEMORANDUM OPINION AND** |
| FLORIN NEIDONI, | ) **ORDER DENYING DEFENDANT'S** |
| | ) **MOTION TO DISMISS** |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Florin Neidoni's ("Neidoni") Motion to Dismiss. [R. 9] Neidoni seeks dismissal of Plaintiff SRVR LLC's ("SRVR") claims pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted. SRVR responded to Neidoni's motion [R. 12], and Defendant filed his brief in reply. [R. 13] This matter, being fully briefed, is now ripe for review. For the reasons stated herein, the Court will **DENY** Defendant's Motion.

I. **Background Facts**

SRVR, LLC is a telecommunications company with one sole member, Daniel Popa ("Daniel"). [R. 1 p. 1] SRVR is one of many companies Daniel Popa owned with his former wife, Lucia Popa ("Lucia"). [R. 9-2 pp. 2–3] When the two divorced, they divided up their various companies; some were majority owned by Daniel, others by Lucia. [R. 9-1 p. 4] Predictably, this led to ongoing litigation between the Popas and others involved with the companies that took place in Jefferson Circuit Court, and on September 29, 2015 the parties to that litigation entered into a Settlement Agreement ("Settlement Agreement" or "Agreement").

1

[R. 9-1 p. 5; R. 11] This Agreement provided that Daniel would purchase all of Lucia's ownership interests in their various companies, including her and her associates' interests in SRVR. [*Id.*] Defendant Neidoni was not a party to this Settlement Agreement, nor was he a party to the state court litigation. [R. 9-1; R. 11] Unfortunately for all involved, this Settlement Agreement was not the end of litigation between the parties. Daniel filed a Second Amended Complaint [R. 9-1] against the parties to the Settlement Agreement resulting in further litigation. [R. 9-2]

In this case, SRVR claims that Florin Neidoni, the company's former co-Chief Executive Officer, broke an alleged contract and violated his fiduciary duties to the company by failing to repay SRVR for his tuition expenses at the Kellogg School of Management at Northwestern University. [R. 1 pp. 2–4] Presumably as an alternative to its contract claim, SRVR also claims that Neidoni has been unjustly enriched from the agreement. [*Id.* p. 3] SRVR claims that the parties had an agreement that SRVR would lend Neidoni money to cover costs and expenses for participating in Kellogg's MBA program. [*Id.* p. 2] The purported agreement stated that Neidoni would have to repay SRVR unless he remained employed as the co-CEO for at least three years after completing the program. [*Id.*] Neidoni graduated from the program in June, 2015. [*Id.* p. 3] In its Complaint, SRVR claims that "Neidoni *left* SRVR's employment in September 2015," [*Id.* (emphasis added)] and that he left "after the 2015 Settlement Agreement was executed." [R. 12 p. 9] Coincidentally, this was the first day that Daniel was the sole member of SRVR. Even more coincidentally, or perhaps not, Neidoni is now the current husband of Lucia Popa, Daniel's ex-wife. [R. 9 p. 2] Now Plaintiff claims that after leaving SRVR, Neidoni has failed to repay any of the money SRVR lent him for his participation in the MBA program. [R. 1 p. 2]

## II. Standard of Review

### A. Conversion of Motion to Dismiss to a Motion for Summary Judgment

The Court cannot address all the arguments in Neidoni's Motion to Dismiss without converting the Motion to one for summary judgment. Neidoni's Motion raises the affirmative defenses of claim preclusion, release based on the purported Settlement Agreement between him and SRVR, and a forum selection clause within that Agreement. [R. 9 pp. 1–2] A motion to dismiss may be granted on the basis of an affirmative defense if the facts conclusively establish the defense as a matter of law. *In re McKenzie*, 716 F.3d 404, 412 (6th Cir. 2013). Courts are typically reluctant to grant motions to dismiss based on an affirmative defense unless the plaintiff has anticipated the defense and explicitly addressed it in the pleadings. *Pfeil v. State St. Bank & Tr. Co.*, 671 F.3d 585, 599 (6th Cir. 2012). "In fact, we only address affirmative defenses on Rule 12(b)(6) motions where the plaintiff's own allegations show that a defense exists and legally defeats the claim for relief." *Lockhart v. Holiday Inn Exp. Southwind*, 531 F. App'x 544, 547 (6th Cir. 2013) (quoting *Marsh v. Genentech, Inc.*, 693 F.3d 546, 554–55 (6th Cir. 2012)) (internal quotations omitted).

When reviewing a motion to dismiss, a district court may not consider matters other than the complaint and its attachments without converting the motion to dismiss into a motion for summary judgment. *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir. 2010) (citing *Winget v. JP Morgan Chase Bank*, 537 F.2d 565, 576 (6th Cir. 2008)). When a party asks the Court to consider matters outside the pleadings when considering a motion under Fed. R. Civ. P. 12(b)(6), the Court must treat the motion as one for summary judgment under Rule 56. Fed. R. Civ P. 12(d). There are some exceptions to this general rule: district courts may consider public records, matters of which a court can take judicial notice, and letter decisions of

government agencies. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) (internal quotations omitted). Among the things of which a district court may take judicial notice are other court proceedings. *Buck*, 597 F.3d at 816. As support for his claim preclusion defense, Neidoni has attached a copy of a state court complaint and a state court order. [R. 9-1; R. 9-2] To support his release and venue defenses, Neidoni filed a copy of the Settlement Agreement. [R. 11] While the Court may consider the state court filings without converting Neidoni's Motion to a motion for summary judgment, it cannot do so with the Settlement Agreement.

To convert a motion under Rule 12 to a motion for summary judgment under Rule 56, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). However, notice of such a conversion is only required where one party is "likely to be surprised by the proceedings," which necessarily depends on the facts and circumstances of the particular case. *Wysocki v. International Business Machine Corp.*, 607 F.3d 1102, 1105 (6th Cir. 2010) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir. 1998)). In this case neither party will be surprised by the Court converting this motion. Neidoni filed the Settlement Agreement and based most of his arguments on its contents. SRVR addressed all of those arguments in its Response, and referenced provisions within the Settlement Agreement as well. Therefore, the Court will convert Neidoni's Motion to Dismiss [R. 9] into a motion for summary judgment under Rule 12(d).

B.  **Standard**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining a motion for summary judgment, a court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party.

4

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Lindsay v. Yates,* 578 F.3d 407, 414 (6th Cir. 2009). The court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 265 (1986). When considering summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252. The initial burden of establishing no genuine dispute of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). If the moving party satisfies this burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Id.* at 324. Where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may treat that fact as undisputed. Fed. R. Civ. P. 56(e).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 477 U.S. at 248. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

### III. Discussion

#### A. Claim Preclusion

Plaintiff's claims are not barred by claim preclusion. The purpose of claim preclusion is to prevent repetitious actions. *Harrod v. Irvine*, 283 S.W.3d 246, 250 (Ky. App. 2009). Under

Kentucky law, claim preclusion, or res judicata, requires that "(1) there must be an identity of the parties between the two actions; (2) there must be an identity of the two causes of action; and (3) the prior action must have been decided on the merits." *Miller v. Admin. Office of Courts*, 361 S.W.3d 867, 872 (Ky. 2011). Neidoni argues that SRVR already litigated its claims in Kentucky state court, where there has been ongoing litigation between Daniel Popa, the sole member of SRVR, and various parties involved with the Settlement Agreement. [R. 9 pp. 6–7] However, Neidoni was not a party in that litigation. Nor was he a party to the Settlement Agreement. Instead, he claims that he was a beneficiary to the Settlement Agreement and this by itself is sufficient for finding that the parties are identical. [R. 9 p. 7] He cites no legal authority for this proposition, and the Court has not found any to support the claim.

      The causes of action in the cases are different as well. Plaintiff accurately states that Kentucky courts follow the Restatement's approach to determining the identity of the causes of action, and that this hinges on whether the controversy arises from the same transactional nucleus of facts. *See Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 371 n.9 (Ky. 2010); *Yeoman v. Commonwealth, Health Policy Bd.*, 983 S.W.2d 459, 464–65 (Ky. 1998). However, the facts underlying the claims in the state court litigation are not the same as in this action. The prior state court litigation addressed whether the parties to that suit (Lucia Popa and other associates of companies that were transferred to Daniel Popa) misled Daniel leading up to the Settlement Agreement, particularly surrounding the companies' tax liability, and thus breached the representations and warranties provision of that Agreement. [R. 9-1 p. 6; R. 9-2 pp. 4–5] By contrast, SRVR's claims in this case relate to actions taken after the Settlement Agreement, with a party not involved in the Agreement, and do not claim a breach of the Agreement. The claimed loan taken by Neidoni did not become payable until after the Settlement Agreement was reached,

6

so there would have been nothing about it to misrepresent at the time of the Agreement. [R. 12 p. 3] As will be discussed in more detail below, unlike Daniel Popa's claims in the state court action, SRVR's claims against Neidoni are not covered by the Settlement Agreement. Moreover, no debt owed by Neidoni is ever mentioned in the state court action. While the claims do, at a general level, involve "transactions between and among the transfer companies, including SRVR, and its former employees," this is too broad a categorization to find the causes of action identical for purposes of claim preclusion. Finally, the Court need not consider whether the judgment was a final judgment on the merits since Neidoni's argument fails the first two requirements of a claim preclusion defense.

  B.  **Settlement Agreement**

Defendant Neidoni also asserts that the Settlement Agreement [R. 11] provides an affirmative defense to SRVR's claims in three ways. First, Neidoni argues that Section 5.08 of the Settlement Agreement released him, along with all former employees of companies that were parties to the Agreement, from claims against them. [R. 9 p. 1] Next, he claims that Section 3.02 of the Settlement Agreement provides the exclusive process and remedy for SRVR in this case. [*Id.* pp. 2–3] Finally, he argues that Section 11.04, a forum selection clause in the Agreement, mandates that this action be brought in Kentucky state court. [*Id.* p. 4]

All of these arguments must be evaluated against the backdrop of the fact that Section 9.14 of the Settlement Agreement explicitly disclaimed any third party beneficiaries, or giving "any rights or benefits upon any person or entity other than the parties hereto and their respective successors and permitted assigns." [R. 11 p. 61 § 9.14] Additionally, Neidoni was not a party to the Settlement Agreement, did not sign the Agreement, and was only mentioned in the

7

Agreement once—in a provision exempting him from the Settlement Agreement's non-compete agreement. [R. 11 p. 34 § 4.03]

> 1. <u>Release of Claims</u>

Neidoni argues that in the Settlement Agreement's release clause, Section 5.08, SRVR released all potential claims it had against him including those in the Complaint. [R. 9 pp. 3–4] Section 5.08 of the Agreement provides that:

> In consideration of the commitments set forth in this Agreement, each of the Transferring Parties, each of the Transfer Companies, and Daniel, except for the obligations provided in this Agreement, hereby release and forever discharge each other, and each other's attorneys, agents, employees, and contractors, from any and all past, present, and future Claims, whatsoever, whether such Claims are known or unknown, foreseen or unforeseen, developed or undeveloped, discoverable or presently incapable of being discovered, relating in any way to any act or omission that occurred or should have occurred on or before the date of this Agreement, including, but not limited to: (a) all Claims asserted in any Lawsuit involving the parties; and (b) all Claims that could have been asserted in any lawsuit involving the parties. The parties agree that the releases contained in this Section 5.08 shall be construed in the broadest sense possible, whereby each party signing this Agreement is releasing all other parties signing this Agreement (as well as the other referenced individuals) for any actions or inactions on or prior to the date of this Agreement that could result or have resulted in damages, judgments, demands, or causes of action of any kind or nature relating in any way to the parties' respective business relationships associated with the Transfer Companies.

[R. 11 p. 40 §5.08] Neidoni claims that through this provision SRVR has released him of the claims it brings in this action. [R. 9 p. 3] However, the release does no such thing, as neither Neidoni nor SRVR's claims against him are within the scope of the release. To interpret the Settlement Agreement, the Court must begin by examining the plain language of the instrument. *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694 (Ky. 2016) "[I]n the absence of ambiguity, a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning." *Wehr*

8

*Constructors, Inc., v. Assurance Company of America*, 384 S.W.3d 680, 687 (Ky. 2012) (internal quotations omitted).

First, Neidoni is not among the parties covered by the release. Neidoni is not a named party to the Settlement Agreement and is not a "Transferring Part[y]" under the Agreement, so the release is inapplicable to him in that manner. [R. 11 p. 4] Neidoni claims that Section 5.08 releases any claims against him because he was an employee of SRVR, one of the named parties to the Agreement. [R. 9 p. 3] However, the Agreement provides that the Transferring Parties "release and forever discharge each other, and each other's . . . employees." Plaintiff correctly identifies the fact that under a natural reading, this release does *not* apply to a Transferring Parties' *own* employees and Neidoni was an employee of SRVR at the time the Settlement Agreement was signed. [R. 12 p. 9; R. 13 p. 2] As SRVR's claim against Neidoni is one against its own former employee, the release under Section 5.08 does not apply.

Section 5.08 is also inapplicable because the claim itself is outside the scope of the release. The release applies to claims based on acts "relating in any way to any act or omission that occurred or should have occurred *on or before the date of this Agreement*." [R. 11 p. 40 §5.08.] (emphasis added) Moreover, it released the signing parties and other referenced individuals "for any actions or inactions *on or prior to the date of this Agreement* that could result or have resulted in . . . causes of action." [*Id.*] (emphasis added) Both parties agree that Neidoni did not leave SRVR until after the Settlement Agreement was signed. [R. 12 p. 9; R. 13 p. 2] Therefore, the alleged loan did not accrue until Neidoni left, which occurred after the Settlement Agreement, meaning that SRVR had no claim against Neidoni that it could have released until after the Agreement. [R. 1 p. 2; R. 12 p. 9]

As Section 5.08 of the Settlement Agreement does not apply to Neidoni or SRVR's claims against him, SRVR has not released him from those claims.

   2.   Loan Receivables

Neidoni next claims that Section 3.02 of the Settlement Agreement provides the exclusive process for which the parties to the Agreement must follow if they discover outstanding loan receivables like the one at issue in this case. [R. 9 pp. 2–3; R. 13 p. 3] Neidoni's alleged agreement with SRVR is not listed as an outstanding loan receivable in the Settlement Agreement. However, Section 3.02, in relevant part, provides that:

> In the event there are any other current outstanding loan receivables owed to the Transfer Companies, which are discovered by Daniel within three (3) years of Closing, then the Transferring Parties shall receive written notice of same and have ten (10) business days to object or take the matter to the Court. If there is no objection or the Court rules in favor of Daniel, then such amounts of such outstanding loans shall be automatically deducted from the current Installment Payments, so that the Installment Payments shall be eliminated until such time as the loan amounts have been paid, and such reduction in the Installment Payments shall not constitute a breach of this Agreement by Daniel.

[R. 11. P. 29 § 3.02] Even ignoring the fact that Neidoni was not a party to the Settlement Agreement and his purported loan agreement with SRVR is likely be outside the scope of the provision, it still is inapplicable in this case. Section 3.02 is quite clear that it applies to *current* outstanding loan receivables, not future ones. The Settlement Agreement was signed September 29, 2015, [R. 11 p. 4], and Neidoni did not cease working at SRVR until after the Agreement. [R. 12 p. 9; R. 13 p. 2] According to the Complaint, Neidoni did not owe SRVR anything until he broke his agreement with it by failing to work for SRVR for three years after finishing his MBA program at Northwestern. [R. 1 p. 2] Therefore, his debt to SRVR would not have been a "current" outstanding loan receivable at the time of the Settlement Agreement.

3. <u>Choice of Venue</u>

Finally, Neidoni claims that the Settlement Agreement's forum selection clause mandates that SRVR bring this action in Jefferson County Circuit Court in the case that led to the Settlement Agreement in the first place. [R. 9 p. 4] The Agreement provides that:

> With regard to any judicial action for any remedy under this Agreement, or to enforce any judgment relating thereto, each of the parties hereto hereby irrevocably and unconditionally submits to the exclusive jurisdiction of the Court, which shall maintain continuing jurisdiction to enforce this Agreement as part of a judgment incorporating same in Case No. 13-CI-002337.

[R. 11 p. 64 § 11.04] SRVR's claim against Neidoni is not one covered by the Settlement Agreement and as such the forum selection clause in inapplicable. First, Neidoni is not a party to the Settlement Agreement or the underlying state court action. Any attempt to enforce the forum selection clause by Neidoni would have to be under a third party beneficiary theory, and the Agreement explicitly disclaims any third party beneficiaries. [R. 11 p. 61 § 9.14] Second, the venue provision applies to "any judicial action for any remedy under this Agreement, or to enforce any judgment relating thereto." [*Id.*] Neidoni has failed to show that SRVR's claim seeks a remedy under the Settlement Agreement. The claim is not a loan receivable under Section 3.02, and Neidoni has not identified any other portion of the Agreement that would cover this claim. Consequently, the forum selection clause is inapplicable to this case.

**C. New Arguments in the Reply Brief**

In his Reply brief, Neidoni raises, but fails to develop, new arguments for why SRVR's claims should be dismissed. It is generally inappropriate to raise new issues in a reply brief because the non-moving party will not have a chance to respond. *See, e.g.*, *Ryan v. Hazel Park*, 279 F. App'x 335, 339 (6th Cir. 2008) ("Generally, this Court has found that an issue raised for the first time in a reply to a response brief in the district court is waived. . . .") (internal quotation

marks and citation omitted); *U.S. v. Jerkins*, 871 F.2d 598, 602 n.3 (6th Cir. 1989). Neidondi first points out that the alleged contract between himself and SRVR would have to be in writing due to the statute of frauds. [R. 13 p. 1] Kentucky law requires contracts that cannot be completed within one year to be in writing. KRS 371.010(7). This contract does seem to fall under the statute of frauds, and SRVR has not attached the contract to its Complaint. Insofar as the Court denies Neidoni's Motion, it does so without prejudice to any statute of frauds defenses Neidoni may assert.

Neidoni next claims that Plaintiff's unjust enrichment claims are not cognizable if there is an actual contract. [R. 13 p. 2] Kentucky law does provide that "unjust enrichment is unavailable when the terms of an express contract control." *Furlong Dev. Co. v. Georgetown-Scott Cty. Planning & Zoning Comm'n*, 504 S.W.3d 34, 40 (Ky. 2016). However, this is merely an alternative pleading. Fed. R. Civ. P. 8(d) allows for alternative or even inconsistent pleadings. Therefore, at this point in the litigation, there are no grounds for dismissing Plaintiff's unjust enrichment claims.

The Court makes no ruling as to the sufficiency of Plaintiff's pleadings regarding its fiduciary duty claims. Neidoni has not challenged their adequacy in his Motion to Dismiss or in his Reply, and the Court makes no ruling on this issue. Finally, because Defendant first raised this issue in his Reply brief, the Court also makes no ruling on the sufficiency of the pleadings regarding punitive damages.

## IV. Conclusion

For these reasons, the Court treats Neidoni's Motion [R. 9] as a motion for summary judgment and denies the Motion. Accordingly, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. Defendant Neidoni's Motion to Dismiss [**R. 9**] is **DENIED**.

This the 13th day of January, 2020.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY